THE N. P. DOANE. THE CLARA H. DOANE. DOANE TOWBOAT CO. v. WARD et al. (two cases).

(Circuit Court of Appeals, First Circuit. July 7, 1925.)

Nos. 1759, 1760.

1. Maritime liens ⚙=65—Evidence that captains of towboats had told railroad employees that coal furnished was to be charged to charterer held properly excluded.

In libel to enforce maritime lien, under Act June 5, 1920, § 30 (Comp. St. Ann. Supp. 1923, § 8146¼p), for bunker coal, it was not error to exclude testimony that captain of boats had notified railroad employees in charge of loading coal that it was to be supplied to charterer, where there was no evidence that they were seller's agents, and seller had notified owner it would not recognize charterers.

2. Evidence ⚙=20(1)—It is common knowledge that hiring of towboats is for short service and by parties whose financial responsibility cannot be easily ascertained.

It is common knowledge that hiring of towboats is for short service and by many different parties whose financial responsibility cannot be easily ascertained.

3. Maritime liens ⚙=28—Towboat held subject to lien for bunker coal furnished while boats in service of charterer.

Towboats held subject to lien under Act June 5, 1920, § 30 (Comp. St. Ann. Supp. 1923, § 8146¼p), for bunker coal furnished boats while in hands of charterer, notwithstanding charterer had agreed to pay therefor, particularly in view of prior refusal to recognize charterers and arrangements made by owner for bunkering of its boats.

Appeals from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Libels by Edgar A. Ward and others against Steamtugs N. P. Doane and Clara H. Doane, claimed by the Doane Towboat Company. From decree for libelants, claimant appeals. Affirmed.

Stephen R. Jones, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellant.

Horace L. Cheyney, of New York City (Macklin, Brown & Van Wyck, of New York City, on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. These two cases are libels to enforce maritime liens on two towboats owned by the appellees for bunker coal furnished the same between July 15 and October 31, 1920, at the port of New York. The liens are claimed under Act June 5, 1920, c. 250, § 30 (41 Stat. 1005 [Comp. St. Ann. Supp. 1923, § 8146¼p]).

It is not in dispute that coal was furnished the two towboats, as claimed, but it is contended that, when this coal was furnished, they were under an oral charter to one Dittmar, by the terms of which he was to pay for bunker coal, and that, because of a further provision of said act (Comp. St. Ann. Supp. 1923, § 8146¼pp), a lien was not conferred, as the libelants knew; or, in the language of the statute:

"By the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party * * * the person ordering the * * * supplies * * * was without authority to bind the vessel therefor."

Mr. Ward, a member of the libelant firm, testified that in the early part of 1920, at the office of his firm in New York, Mr. Doane, the president of the Doane Towboat Company, said that his boats would be in New York harbor from time to time, and that he wanted him to take care of bunkering them. Mr. Doane admitted that this arrangement was made, and that afterwards his towboats went to the pockets of E. A. Ward & Co., and got coal, which was paid for by the Doane Towboat Company.

The towboats libeled were chartered to W. D. Dittmar at the dates when all the coal was

furnished for which a lien is claimed. The charters were all oral and for 15 days each, and provided that Dittmar should pay for coal and water.

Doane testified that Dittmar would pay in advance for the use of the towboats 15 days, and at the expiration of this time, or shortly before, he would see Dittmar and ask if he required the service for another 15 days, and, if so, he again paid in advance for the service to be rendered.

There was no evidence that any notice was ever given to the libelants by the owner that these towboats had been chartered. Doane testified that at different times during the summer of 1920 he met Ward and Dittmar together, and the coaling and operation of the towboats were discussed, but he could not recall any time when Ward was notified that the tugs were under charter to Dittmar, and that it was not until after the coal was "billed" to his company that he wrote Ward that Dittmar was to pay for the coal.

There was evidence that the captains of the towboats were told that they were to notify the people who supplied coal that the boats were under charter to Dittmar and that the coal was to be charged to him.

[1] The claimant, appellant, offered to prove by testimony of the captains that, when they went for coal to the pockets of the appellees in Jersey City, they notified the railroad employees in charge of the docks and of loading the coal that it was to be supplied for Dittmar, the charterer, but this was excluded. This is assigned as error.

If the employees of the railroad company were the agents of E. A. Ward & Co., so that notice to them was notice to their principal, it can only be inferred from the fact that they delivered the coal to the appellants' towboats. Their instructions, as disclosed by the evidence, were to deliver coal to these towboats, and their only duty was to make sure of their identity and to see that they were loaded and a receipt taken for the amount of coal furnished.

Coal was first furnished either of these towboats on July 15, 1920; but on May 22, 1920, E. A. Ward & Co. had, in a letter to the Doane Towboat Company, notified it, in reply to the latter's letter in which it had claimed that coal supplied to its towboat Peerless should have been charged to a charterer, "that we must insist on rendering you, as owners of the tug Peerless, invoices for any coal supplied this tug, as we will not recognize any agent that might have your tug under charter from time to time."

As there was undisputed evidence that an agreement was made between the owner and the libelants that the towboats were to be bunkered when in the port of New York by the libelants during the season of 1920; that coal had been supplied under this agreement and paid for by the Doane Towboat Company; that, when an attempt was made to shift liability for coal so furnished from the owner of the towboat to the charterer, the owner was notified that the libelants would not give credit to any person who might have the towboat under charter from time to time, and there was no evidence that the owner dissented nor any evidence that the employees of the railroad company were the agents of E. A. Ward & Co. other than for the purpose of loading the coal, the offered testimony was properly excluded.

The coal in question was not furnished upon the orders of the towboat captains, but under the arrangement made by their owner with the libelants, and the owner knew that the libelants would not give credit to any charterer.

[2, 3] It is a matter of common knowledge that the hiring of towboats is for short service, and by many different parties whose financial responsibility cannot always be easily ascertained. It was therefore a very reasonable position for the libelants to take that it would furnish coal on the credit of the towboats and their owner only. This position was made clear to the owner by the libelants' letter to which reference has been made.

As all the coal in question was furnished after its receipt, and the owner had not dissented from the position taken by the libelants, it must be presumed to have been furnished in accordance with it. The facts in this case distinguish it from United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361.

The decree of the District Court is affirmed in each case, with costs to the appellees in this court.